Josh A. Cohen (Cal. Bar No. 217853)
Debevoise & Plimpton LLP
650 California Street
San Francisco, California 94108
Telephone: (415) 738-5700
jacohen@debevoise.com

Michael Schaper (appearance *pro hac vice*)
Erica S. Weisgerber (appearance *pro hac vice*)
Adam C. Saunders (appearance *pro hac vice*)
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
mschaper@debevoise.com
eweisgerber@debevoise.com
asaunders@debevoise.com

Edward D. Hassi (appearance *pro hac vice*)
Debevoise & Plimpton LLP
801 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 383-8000
thassi@debevoise.com

Attorneys for Defendant TPG Global, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| LYRICFIND, INC., | Case No.: 3:25-cv-02265-JSC |
| Plaintiff, | DEFENDANT TPG GLOBAL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| v. | |
| MUSIXMATCH S.P.A. and TPG GLOBAL, LLC, | |
| Defendants. | Date: August 21, 2025 Time: 10:00 AM Judge: Hon. Jacqueline S. Corley Ctrm: 8, 19th Floor |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on August 21, 2025, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 8 of the Honorable Jacqueline S. Corley at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Defendant TPG Global, LLC shall and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6), to dismiss Counts 1, 4, 7, 8, 9, 10, 11, 12 and 13 of the Complaint filed by Plaintiff LyricFind, Inc. against TPG Global, LLC for failure to state a claim upon which relief can be granted on the grounds set forth in the accompanying memorandum of points and authorities.

This motion is based on the memorandum of points and authorities contained herein; codefendant Musixmatch S.p.A.'s corresponding motion to dismiss and accompanying memorandum of points and authorities; any reply papers that LyricFind, Inc. or Defendants may file; all pleadings, records, and papers on file in this action; and such further arguments as may be presented to the Court at or prior to the hearing on the motion.

Dated: June 5, 2025

Respectfully submitted,

*/s/ Josh A. Cohen*
Josh A. Cohen (Cal. Bar No. 217853)
Debevoise & Plimpton LLP
650 California Street
San Francisco, California 94108
(415) 738-5700 (phone)
(415) 644-5628 (fax)

Attorneys for Defendant TPG Global, LLC

# TABLE OF CONTENTS

PAGE

**Memorandum of Points and Authorities** ................................................................. 1

**Statement of Issues to be Decided** .................................................................... 1

**Preliminary Statement** ............................................................................... 1

**Statement of Facts** .................................................................................. 3

**Argument** ........................................................................................... 5

I.     TPG Is Legally Incapable of Conspiring with Musixmatch ................................. 7

II.    TPG's Exploration of a Transaction With LyricFind Does Not Support an Antitrust or Unfair Competition Claim ................................................... 9

III.   The Complaint Fails to Allege Involvement of TPG in the Musixmatch/WCM Agreement ............................................................................. 11

IV.   Plaintiff's Alleged Breach of the NDA Is Implausible on Its Face ..................... 15

V.    Plaintiff's Interference Claims Are Legally and Factually Deficient ................... 17

**Conclusion** ....................................................................................... 18

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                           **Page**

3

*3D Systems, Inc. v. Wynne*
    2022 WL 21697345 (S.D. Cal. Mar. 9, 2022) ...................................................................... 15

4

*Aguilera v. Pirelli Armstrong Tire Corp.*
    223 F.3d 1010 (9th Cir. 2000) .............................................................................................. 16

5

6

*Am. Pan Co. v. Lockwood Mfg., Inc.*
    2008 WL 471685 (S.D. Ohio Feb. 15, 2008) ....................................................................... 17

7

8

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*
    900 F.3d 623 (9th Cir. 2018) ........................................................................................... 7, 13

9

*Arcell v. Google LLC*, No. 22-cv-02499
    2023 WL 5336865 (N.D. Cal. Aug. 18, 2023) ....................................................................... 7

10

11

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ......................................................................................................... 5, 6

12

13

*Bell Atlantic Corp v. Twombly*
    550 U.S. 544 (2007) ............................................................................................................... 5

14

*Blantz v. Ca. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*
    727 F.3d 917 (9th Cir. 2013) ............................................................................................... 13

15

16

*Bruce Kirby, Inc. v. LaserPerformance (Eur.) Ltd.*
    2019 WL 3767510 (D. Conn. Aug. 9, 2019) ....................................................................... 17

17

18

*Cal. Crane Sch., Inc. v. Google LLC*
    722 F. Supp. 3d 1026 (N.D. Cal. 2024) .......................................................................... 6, 10

19

*Cervantes v. Countrywide Home Loans, Inc.*
    656 F.3d 1034 (9th Cir. 2011) ............................................................................................. 19

20

21

*City of Anaheim v. S. Cal. Edison Co.*
    955 F.2d 1373 (9th Cir. 1992) .............................................................................................. 10

22

23

*Copperweld Corp. v. Indep. Tube Corp.*
    467 U.S. 752 (1984) ............................................................................................................... 7

24

*Crown Imports, LLC v. Superior Ct.*
    223 Cal. App. 4th 1395 (Cal. App. 2014) ............................................................................ 18

25

26

*Damabeh v. 7-Eleven, Inc.*
    No. 5:12-CV-1739-LHK, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ......................... 17, 18

27

28

*Deborah Heart & Lung Ctr. v. Penn Presbyterian Med. Ctr.*
    2011 WL 6935276 (D.N.J. Dec. 30, 2011) ............................................ 12

*Dreamstime.com, LLC v. Google, LLC*
    54 F.4th 1130 (9th Cir. 2022) ............................................................ 10

*Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*
    No. 4:23-CV-04398, 2024 WL 5274650 (S.D. Tex. Sept. 27, 2024) ............ 8, 13, 14

*Fed. Trade Comm'n v. Microsoft Corp.*
    136 F.4th 954 (9th Cir. May 7, 2025) .................................................. 2

*Fed. Trade Comm'n v. U.S. Anesthesia Partners*
    2024 WL 2137649 (S.D. Tex. May 13, 2024) ........................................ 9, 15

*Flores v. EMC Mortg. Co.*
    997 F. Supp. 2d 1088 (E.D. Cal. 2014) ................................................ 14

*Freeman v. San Diego Ass'n of Realtors*
    322 F.3d 1133 (9th Cir. 2003) ........................................................... 7

*Galope v. Deutsche Bank Nat'l Tr. Co.*
    2012 WL 12884663 (C.D. Cal. Sept. 26, 2012) ...................................... 14

*Gibson v. MGM Resorts Int'l*
    No. 2:23-cv-00140, 2023 WL 7026984 (D. Nev. Oct. 24, 2023) ................. 11, 12

*In re California Gasoline Spot Mkt. Antitrust Litig.*
    No. 20-CV-03131-JSC, 2021 WL 4461199 (N.D. Cal. Sept. 29, 2021) .......... 14

*In re California Title Ins. Antitrust Litigation*
    2009 WL 1458025 (N.D. Cal. May 21, 2009) ......................................... 11

*In re Hard Drive Suspension Assemblies Antitrust Litig.*
    2020 WL 5074041 (N.D. Cal. Aug. 26, 2020) ........................................ 16

*In re Musical Instruments and Equip. Antitrust Litig.*
    798 F.3d 1186 (9th Cir. 2015) ........................................................... 10

*In re Optical Disk Drive Antitrust Litig.*
    No. 10-MD-02143, 2017 WL 11513316 (N.D. Cal. Dec. 18, 2017) .............. 14

*In re Pa. Title Ins. Antitrust Litig.*
    648 F. Supp. 2d 663 (E.D. Pa. 2009) .................................................. 12

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*
    407 F.3d 1027 (9th Cir. 2005) ........................................................... 7

*Kendall v. Visa U.S.A., Inc.*
    518 F.3d 1042 (9th Cir. 2008) ........................................................... 10, 11

*Kline v. Coldwell, Banker & Co.*
   508 F.2d 226 (9th Cir. 1974) ................................................................................. 13

*Kraft v. CalPortland Constr.*, 801 F. App'x 547 (9th Cir. 2020) ................................... 9, 12

*Levi Case Co. v. ATS Prods., Inc.*
   788 F. Supp. 428 (N.D. Cal. 1992) .......................................................................... 7

*Masimo Corp. v. Tyco Health Care Grp., L.P.*
   2004 WL 5907538 (C.D. Cal. June 10, 2004) ...................................................... 10

*McCarthy Corp. PLC v. KPMG LLP*
   [2006] O.J. No. 1492 (Can. Ont. S.C.J.) .............................................................. 17

*Menzel v. Scholastic, Inc.*
   No. 17-CV-05499, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ........................ 13

*Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*
   795 F.3d 1124 (9th Cir. 2015) ............................................................................. 10

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*
   2016 WL 6782768 (C.D. Cal. Aug. 9, 2016) ....................................................... 11

*OJ Com., LLC v. KidKraft, Inc.*
   34 F.4th 1232 (11th Cir. 2022) .............................................................................. 8

*Pacific Bell Tel. Co. v. linkLine Commc'ns, Inc.*
   555 U.S. 438 (2009) ............................................................................................. 10

*Patent Scaffolding Co. v. William Simpson Constr. Co.*
   256 Cal. App. 2d 506 (1967) ............................................................................... 16

*Persaud v. Telus Corp.,*
   2017 ONCA 479 (Can. Ont. C.A.) ...................................................................... 16

*PPC Broadband, Inc. v. Transformix Eng'g Inc.*
   2015 WL 339564 (N.D.N.Y. Jan. 26, 2015) ....................................................... 16

*Rearden LLC v. TWDC Enters. 18 Corp.*
   722 F. Supp. 3d 1011 (N.D. Cal. 2024) ............................................................... 13

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*
   733 F.3d 1251 (9th Cir. 2013) ............................................................................... 5

*SmileDirectClub, LLC v. Tippins*
   31 F.4th 1110 (9th Cir. 2022) .............................................................................. 11

*Snapkeys, Ltd. v. Google LLC*
   442 F. Supp. 3d 1196 (N.D. Cal. 2020) ............................................................... 15

*Soo Park v. Thompson*
   851 F.3d 910 (9th Cir. 2017) ............................................................... 13

*Space Data Corp. v. X*
   2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ..................................... 15

*Stolz v. Wong Commc'ns Ltd. P'ship*
   25 Cal. App. 4th 1811, 1825 (1994) ................................................... 18

*Top Rank, Inc. v. Haymon*
   No. CV154961, 2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ...................... 8, 11

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................... 18

*UMG Recordings, Inc. v. MP3.Com, Inc.*
   92 F. Supp. 2d 349 (S.D.N.Y. 2000) ..................................................... 1

*United States v. Bestfoods*
   524 U.S. 51 (1998) ............................................................................ 11

*United States v. CalPortland Constr.*
   No. 16-CV-04479, 2018 WL 6262877 (C.D. Cal. Mar. 9, 2018) .................. 9, 12

*Wallace Sales & Consulting, LLC v. Tuopo N. Am., Ltd.*
   2015 WL 4509349 (E.D. Mich. July 24, 2015) ..................................... 17

*Yates v. Money Source, Inc.*
   2023 WL 4305059 (E.D. Cal. June 30, 2023) ....................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant TPG Global, LLC ("TPG") joins codefendant Musixmatch S.p.A.'s ("Musixmatch") motion to dismiss Plaintiff LyricFind, Inc.'s ("Plaintiff" or "LyricFind") Complaint (the "Complaint," ECF No. 1).  TPG submits this separate Rule 12(b)(6) motion to raise additional separate and independently sufficient bases to dismiss the Complaint's claims against TPG.  For the reasons that follow, and those stated in Musixmatch's motion to dismiss,[1] TPG respectfully requests that the Court dismiss all claims in the Complaint asserted against TPG.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Complaint's claims against TPG should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

## PRELIMINARY STATEMENT

It is one of the most fundamental tenets of corporate law that corporate separation must be respected; disregard of the corporate form is only warranted in extraordinary circumstances. LyricFind's Complaint turns on its head this well-established principle of corporate law by conflating the actions of TPG and Musixmatch—entirely separate companies and legal entities—in an attempt to pull TPG into a lawsuit to which it does not belong.  In doing so, LyricFind seeks to impose liability on TPG through group pleading and conclusory allegations, while failing to allege any facts sufficient to support any independent participation in any supposed violation by TPG.

The crux of this case is whether Warner Chappell Music ("WCM"), as an undisputed owner of copyrighted content, may enter an exclusive arrangement with Musixmatch to distribute that copyrighted content.  The answer is unequivocally yes—a copyright holder may choose who distributes its copyrighted content, including on an exclusive basis, without that arrangement being subject to attack under the antitrust laws.[2]

---

[1]    TPG incorporates by reference the arguments set forth in Musixmatch's motion to dismiss.

[2]    *See UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 352 (S.D.N.Y. 2000) (internal citation omitted) (finding a "copyrightholder's 'exclusive' rights, derived from the Constitution and the Copyright Act, include the right, within broad limits, to curb the

Even if one assumes that this is a close or debatable question (and it is not), any such agreement between WCM and Musixmatch has nothing to do with, and provides no basis for an antitrust claim against, TPG.  TPG is not alleged to have entered into any agreement with WCM.  Nor does Plaintiff allege any specific, non-conclusory facts suggesting TPG took any specific actions in connection with that agreement such that TPG could even theoretically be independently liable.  Indeed, Plaintiff's case against TPG rests entirely on speculative and formulaic assertions—allegations made "upon information and belief" and unsupported by any concrete factual detail.  Stripped of all its rhetoric, at most, the Complaint reflects independent and lawful business behavior: an investment firm exploring a potential acquisition (which never occurred) and a portfolio company separately entering into a licensing agreement (which TPG did not negotiate or sign).  That is not unlawful or improper, let alone a Sherman Act violation.

Plaintiff repeatedly invokes a so-called "buy or bury" scheme as the supposed connective tissue between these events but fails to allege any specific facts tying them together or any unlawful conduct by TPG in connection with such "scheme."  Instead, Plaintiff leans heavily on the "buy or bury" label itself, while alluding to general public announcements that "[a]ntitrust regulators have taken notice of these anticompetitive strategies" and "launched a public inquiry to identify" such practices by private equity firms.  Compl. ¶¶ 113–14.  But none of those regulatory inquiries relate to TPG—let alone Musixmatch or anything else relevant to this case— rendering "buy or bury" a rhetorical device, not a basis for a well-plead complaint.  Indeed, Plaintiff's actual claims regarding the supposed "buy or bury" scheme amount to nothing more than unremarkable, rational market behavior, which is legally deficient to state a claim against TPG.

Beyond these basic failures, Plaintiff cannot, as a matter of law, allege that TPG conspired with its majority-owned portfolio company Musixmatch, with whom it shares a common

---

development of . . . a derivative market by refusing to license a copyrighted work or by doing so only on terms the copyright owner finds acceptable."); *Fed. Trade Comm'n v. Microsoft Corp.*, 136 F.4th 954, at 971 (9th Cir. May 7, 2025) ("It is in the nature of intellectual property rights that the holder ultimately has exclusive control over them.").  This issue is addressed at length in Musixmatch's motion to dismiss.

economic interest. The well-established *Copperweld* doctrine precludes liability on that basis alone.

Put simply, TPG should not be in this case for multiple, independent reasons, and LyricFind's allegations fail to plead a cognizable theory of liability against TPG. Plaintiff's claims against TPG all fail as a matter of law and should be dismissed with prejudice.

## STATEMENT OF FACTS

Plaintiff LyricFind provides Lyric Data Services[3] and Lyric Rights Licensing,[4] services that enable music streaming platforms ("digital services providers" or "DSPs"), including Spotify, Apple Music, Amazon Music, YouTube Music, Pandora and others, to display synchronized music lyrics along with their digital streaming content. Compl. ¶¶ 1, 13, 30, 41. DSPs license the rights to a song and its lyrics from music publishers such as WCM. *Id.* ¶¶ 12, 53. LyricFind and Musixmatch compete to provide Lyric Data Services and Lyric Rights Licensing to DSPs like Spotify. *Id.* ¶ 31. Defendant TPG is an investment manager that, like others in its industry, acquires and invests in "portfolio companies." *Id.* ¶ 111. In 2022, TPG purchased a "controlling stake" in Musixmatch. *Id.* ¶¶ 32, 115.

LyricFind alleges that Defendants TPG and Musixmatch conspired with non-party WCM to monopolize and restrain trade in the purported markets for Lyric Data Services and Lyric Rights Licensing.[5] *See id.* ¶¶ 7–8, 19–22, 178–79. The Complaint also asserts that TPG and Musixmatch acted in concert with WCM to eliminate LyricFind as a competitor and allegedly "forced" Spotify and other DSPs to contract exclusively with Musixmatch for lyric services. *Id.* ¶¶ 8, 22.

The focal point of Plaintiff's Complaint is the claim that LyricFind was injured as the result of an allegedly anticompetitive agreement between Musixmatch and WCM—an agreement which purportedly "cut off LyricFind's and other providers' previous non-exclusive access to WCM's lyric catalog." *Id.* ¶ 6. In particular, the Musixmatch/WCM agreement allegedly "robbed

---

[3]     Lyric Data Services include digital lyric transcriptions and related synchronization data, as well as royalty administration. Compl. ¶ 2.

[4]     Lyric Rights Licensing includes licensing the rights to display lyrics. Compl. ¶ 2.

[5]     The Complaint identifies WCM as a co-conspirator but does not name it as a defendant in the action. *See* Compl. ¶ 178.

[LyricFind] of an opportunity to partner with Spotify" because Spotify chose to renew its ongoing partnership with Musixmatch following news of Musixmatch's agreement with WCM.  *Id.* ¶ 24.

LyricFind claims that TPG—despite not being a party to that agreement (*see, e.g.*, *id.* ¶¶ 6, 134)—should nonetheless be held liable.  *See id.* ¶ 137.  The Complaint does not allege that TPG had any direct communications with WCM or that TPG played a substantive role in the development of the Musixmatch/WCM agreement.  Instead, Plaintiff seeks to hold TPG liable based on unsubstantiated allegations that, on information and belief, TPG "orchestrated," "direct[ed]," or "approved" Musixmatch's conduct, *see, e.g.*, *id.* ¶¶ 21, 70, 137, and because this conduct was allegedly part of a broader anticompetitive scheme that included (i) TPG seeking to acquire LyricFind (*id.* ¶¶ 110–25), and (ii) TPG and Musixmatch allegedly leaking confidential information to disrupt LyricFind's negotiations with Spotify.  *Id.* ¶¶ 126–30.

The facts pled in support of this alleged scheme, however, are threadbare at best.  After TPG acquired Musixmatch in 2022, TPG and LyricFind discussed a potential acquisition of LyricFind.  *Id.* ¶ 116.  To facilitate the exchange of confidential information needed to evaluate an acquisition, TPG and LyricFind entered into a Mutual Non-Disclosure Agreement in January 2023 (the "NDA").  *Id.* ¶ 117.  The parties engaged in several months of discussions and due diligence and LyricFind took steps "to facilitate TPG's potential acquisition" (*id.* ¶ 121), but, ultimately, no agreement was reached and the parties ended negotiations in December 2023.  *Id.* ¶ 123.  Although the Complaint references antitrust investigations into acquisition strategies by private equity firms in general (*id.* ¶ 114), it does not allege that TPG completed any unlawful acquisition; nor could it, since no acquisition was ever consummated.  *Id.* ¶ 123.

As for the alleged NDA breach, LyricFind claims that—as is typical during due diligence—TPG and certain representatives from Musixmatch obtained access, pursuant to the NDA, to sensitive business information, including LyricFind's financial data, commercial relationships, and strategic plans, *id.* ¶ 121, and as LyricFind was in negotiations with Spotify to potentially take over Musixmatch's contract, TPG and Musixmatch "disclosed and mischaracterized confidential information about LyricFind to Spotify to try to prevent Spotify

from replacing Musixmatch with LyricFind." *Id.* ¶ 20; *see also id.* ¶¶ 102–04. LyricFind's allegations fail both because they are insufficient to establish any breach, and because they actually prove the absence of damages. First, the Complaint does not specify what confidential information was supposedly divulged to Spotify, how such information was mischaracterized, or any other specific facts about the alleged disclosure. Instead, LyricFind speculates that TPG and Musixmatch "hoped" such disclosure would hinder LyricFind's negotiations with Spotify. *Id.* ¶ 129. Moreover, not only does LyricFind fail to allege damages, it actually establishes that there were not any by acknowledging that the alleged plan failed, because LyricFind's negotiations with Spotify continued after the alleged disclosure and Spotify allegedly began to "integrat[e] LyricFind's technical infrastructure for Lyric Data Services in anticipation of potentially switching from Musixmatch to LyricFind." *Id.* ¶ 130; *see also id.* ¶ 106. LyricFind also contends that its contract negotiations with Spotify, and later iHeartRadio, were interrupted when those DSPs were "informed" of WCM's agreement with Musixmatch, but does not allege any specifics around those circumstances or any interaction by TPG with Spotify or iHeartRadio. *See id.* ¶ 253–57. LyricFind's insufficient and incoherent allegations provide no basis to support claims against TPG.

## ARGUMENT

To survive a motion to dismiss, a plaintiff must allege facts establishing a plausible claim for relief that exceeds a speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must allege enough facts to state a claim that is plausible, not merely conceivable; mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do," *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. Nor must a court accept "unwarranted deductions of fact[] or unreasonable inferences." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotations and citations omitted). Instead, courts must conduct a "context-specific" inquiry and rely on "judicial experience and common sense" to

1    determine whether a plaintiff's "well-pleaded factual allegations . . . plausibly give rise to an

2    entitlement to relief." *Ashcroft*, 556 U.S. at 679.

3         Frustrated by, and desperate to shift the blame for, its inability to compete with

4    Musixmatch, LyricFind concocts a fanciful claim of anticompetitive conduct by TPG and

5    Musixmatch.  Review of the Complaint makes plain that LyricFind's allegations against TPG are

6    "supported" only by nefarious descriptions of routine commercial activity and allusions to vague

7    policy pronouncements by the prior leadership of the Federal Trade Commission about certain

8    "buy or bury" behavior running afoul of Section 7 of the Clayton Act, which is not relevant here.

9    Plaintiff attempts to leverage antitrust regulators' interest in "buy or bury" schemes into a basis

10   to sustain its claims against TPG and Musixmatch, without any actual allegations of behavior that

11   violates any laws.  *See, e.g.*, Compl. ¶¶ 113–14.  There is no acquisition at issue here, nor is there

12   any other plausibly anticompetitive conduct by TPG or Musixmatch that could tie these general

13   policy concerns to the facts of this case.  Thus, without alleging that any components of its alleged

14   scheme are in and of themselves unlawful, LyricFind's claims fail.

15        Here, the so-called scheme alleged by Plaintiff involves either rational and legal market

16   behavior or vague and conclusory allegations that do not rise to the level of stating a claim against

17   TPG (or Musixmatch, for that matter).  As explained herein, LyricFind has not plausibly pled any

18   unlawful conduct by TPG.  LyricFind also points to no factual bases from which to plausibly infer

19   that any of the alleged conduct (to the extent it even occurred) was part of a "scheme."  The

20   Complaint relies entirely on conclusory allegations and speculation and provides no basis to

21   conclude (or even infer) that TPG was engaged in an anticompetitive plot as opposed to the

22   rational, typical, and legal conduct of a private equity firm.

23        The claims against TPG should be dismissed.[6]

24   _____

25        [6] Plaintiff's core claims are brought under the federal antitrust laws.  Where, as here,
     Plaintiff's Section 1 and Section 2 claims are based on the same alleged conduct, the failure to

26   plausibly allege an underlying conspiracy is sufficient to defeat both claims.  *See, e.g.*, *Cal. Crane
     Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1040 (N.D. Cal. 2024) ("[Plaintiff]'s Section 2

27   claim fails for largely the same reasons as its Section 1 claim. . . . [Plaintiff] fails to plead
     evidentiary facts sufficient to plausibly allege an agreement or conspiracy between

28

## I.    TPG Is Legally Incapable of Conspiring with Musixmatch

Most of the claims against TPG (Counts 1, 4, 7, 8, 9, and 10)[7] are premised on a purported conspiracy between Musixmatch and TPG.  Even assuming Plaintiff had sufficiently alleged a conspiracy, Plaintiff cannot allege that TPG and its portfolio company Musixmatch conspired as a matter of law, as they constitute a single legal entity for antitrust purposes.

It is well established that a plaintiff cannot base a Sherman Act claim on an alleged conspiracy between a parent and its subsidiary, because an agreement under the Sherman Act must be between separate, independent entities capable of combining their efforts to restrain trade. *See, e.g.*, *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769–771 (1984).  Specifically, the *Copperweld* doctrine holds that "[w]here there is substantial common ownership, . . . individual firms function as an economic unit and are generally treated as a single entity." *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 630 (9th Cir. 2018) (quoting *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1148 (9th Cir. 2003)).

"[C]ourts have since applied *Copperweld*'s reasoning (sometimes referred to as the single-entity rule) to a broader variety of economic relationships."  *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005) (quotations omitted); *see also Levi Case Co. v. ATS Prods., Inc.*, 788 F. Supp. 428, 431 (N.D. Cal. 1992) (finding that a patent holder and its exclusive patent licensee are not legally capable of entering into an antitrust conspiracy because the "relationship between [the two entities] can be a "conspiracy" in violation of the antitrust laws only if it deprives the marketplace of independent actors"). Likewise, private equity sponsors and their portfolio companies typically have "a complete unity of interest" and "common objectives with respect to [the portfolio company]'s success in

[defendants]."); *Arcell v. Google LLC*, No. 22-cv-02499, 2023 WL 5336865, at *4 (N.D. Cal. Aug. 18, 2023) (dismissing Section 2 conspiracy claim because it was rooted in the same flawed conspiracy as the alleged Section 1 claim); *Levi Case Co. v. ATS Prods., Inc.*, 788 F. Supp. 428, 430 (N.D. Cal. 1992) (noting that "courts have applied the *Copperweld* holding to conspiracies to monopolize alleged under § 2" (internal citation omitted)).

[7]    The remaining claims against TPG are Intentional and Negligent Interference with Prospective Economic Advantage (Counts 11 and 12, respectively) and Breach of Contract (Count 13).  These claims should be dismissed for the reasons discussed further below.

the relevant [] markets" and cannot legally enter into an antitrust conspiracy. *Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*, No. 4:23-CV-04398, 2024 WL 5274650, at *5 (S.D. Tex. Sept. 27, 2024); *see also OJ Com., LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1241–43 (11th Cir. 2022) ("MidOcean [sponsor with 57% interest] and KidKraft [portfolio company] are incapable of conspiring for purposes of section one because the evidence establishes that MidOcean has majority ownership of and controls KidKraft").

The Complaint states that TPG owns an 80% "controlling stake" in Musixmatch. Compl. ¶¶ 32, 115. This establishes TPG's and Musixmatch's unity of interest, and nothing in the Complaint pleads otherwise; indeed, the Complaint suggests (albeit in a conclusory fashion) that TPG and Musixmatch have the same interests and goals, *see, e.g.*, *id.* ¶¶ 36, 137, further supporting application of the *Copperweld* doctrine. *See Top Rank, Inc. v. Haymon*, No. CV154961, 2015 WL 9948936, at *16 (C.D. Cal. Oct. 16, 2015) (finding that the defendants cannot, as a matter of law, conspire with each other because they "share a complete unity of economic interest in the venture's success, and have no alleged separate interest" and the investor defendants "are similar to the components of single firm that act to maximize the firm's profits." (quotations omitted)). Accordingly, under *Copperweld* and its progeny, TPG and Musixmatch constitute a single economic and legal entity and are incapable of conspiring with one another.

LyricFind's vague allegation that "TPG, Musixmatch, and WCM conspired to effectuate the WCM-Musixmatch Exclusive and surrounding anticompetitive scheme," Compl. ¶ 178, is insufficient to overcome *Copperweld*. The only allegations relating to WCM are that it contracted with Musixmatch for its services. And as explained further herein, the Complaint is devoid of any specific factual allegations connecting TPG to WCM or to Musixmatch's contract with WCM. Nor are there any allegations connecting WCM to the purported "'buy or bury' scheme."[8]

---

[8]    Nor is WCM's involvement in such a scheme plausible. It would be against WCM's economic interests to enter into a conspiracy with TPG and Musixmatch to "buy or bury" a competitor of Musixmatch that provides WCM alternative options, e.g., if it could not agree on desirable commercial terms with Musixmatch.

1   LyricFind cannot use conclusory allegations to try to connect TPG and WCM for the purposes of

2   pleading a conspiracy.

3   Accordingly, the alleged conspiracy between TPG and Musixmatch fails as a matter of

4   law, and Counts 1, 4, 7, 8, 9 and 10 of the Complaint should be dismissed.

5   **II.     TPG's Exploration of a Transaction With LyricFind Does Not Support an**

6   **Antitrust or Unfair Competition Claim**

7   The Complaint's allegations concerning TPG's explored acquisition of LyricFind do not

8   describe any illegal or anticompetitive conduct.  That LyricFind—which willingly participated in

9   those talks and took steps to "facilitate TPG's potential acquisition"—now claims otherwise is

10   not credible.  Compl. ¶ 121.

11   At most, the Complaint alleges that TPG considered whether to acquire LyricFind after

12   its July 2022 acquisition of a controlling stake in Musixmatch, purportedly as part of a broader

13   strategy to improve Musixmatch's profitability.  Compl. ¶¶ 19, 112, 115.  But the mere attempt

14   to acquire a competitor, including by a private equity sponsor, is not anticompetitive in itself.

15   *See, e.g.*, *Fed. Trade Comm'n v. U.S. Anesthesia Partners*, 2024 WL 2137649, at *5–6 (finding a

16   private equity sponsor's desire to make further acquisitions in an industry in which they are

17   invested does not indicate a plan to violate the antitrust laws).[9]

18   To state a plausible conspiracy claim, LyricFind must allege facts supporting the inference

19   that Defendants' conduct was undertaken as part of an unlawful agreement—not merely as

20   independent business conduct.  *United States v. CalPortland Constr.*, No. 16-CV-04479, 2018 WL

21   6262877, at *3 (C.D. Cal. Mar. 9, 2018), *aff'd sub nom. Kraft v. CalPortland Constr.*, 801 F.

22   App'x 547 (9th Cir. 2020).  There is nothing unlawful or unusual about TPG's interest in acquiring

23   LyricFind.  Private equity firms routinely explore acquisitions in industries or sectors where their

24   portfolio companies operate.

25

26

27   [9]     To the extent there were concerns about the competitive implications of the transaction
    (if it had actually happened), the Hart-Scott-Rodino Act provides a regulatory framework for

28   antitrust regulators to evaluate deals before they are consummated.  *See* 15 U.S.C. § 18a.

Courts "cannot . . . infer an anticompetitive agreement when factual allegations 'just as easily suggest rational, legal business behavior.'" *Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008)). LyricFind's allegations "are no more consistent with an illegal agreement than with rational and competitive business strategies, independently adopted by firms acting within an interdependent market" and cannot get past the pleading stage. *In re Musical Instruments and Equip. Antitrust Litig.*, 798 F.3d 1186, 1186, 1193–94 (9th Cir. 2015). Plaintiff's broader assertions about private equity strategies—such as that TPG, like other sponsors, seeks to boost profitability through acquisitions (Compl. ¶¶ 111–14)—are irrelevant and do not otherwise support any inference of unlawful conduct.

In short, the Complaint alleges nothing more than the fact that TPG explored an acquisition of LyricFind through ordinary commercial means. That is not anticompetitive conduct, and it cannot serve as the basis for liability under the antitrust laws. *See Dreamstime.com, LLC v. Google, LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022) ("Because each individual action alleged by Dreamstime does not rise to anticompetitive conduct . . . , their collective sum likewise does not."); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2004 WL 5907538, at *5 (C.D. Cal. June 10, 2004) (rejecting plaintiff's attempt to "throw[] into the 'mix' every potential allegation of misconduct without regard as to whether such conduct is truly anticompetitive"—and explaining instead "the need to show specific intent when proving specific acts of unlawful monopolistic conduct" based on the holding in City of Anaheim, which "does not allow for clearly legal acts to be thrown into the mix to bolster a plaintiff's antitrust case." (citing *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1378 (9th Cir. 1992))); *Pacific Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 452, 457 (2009) (finding that plaintiffs alleged "nothing more than the amalgamation of a meritless claim at the retail level and a meritless claim at the wholesale level" and concluding that "[t]wo wrong claims do not make one that is right."); *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1039 (N.D. Cal. 2024) (finding that "[Plaintiff] has not pleaded evidentiary facts sufficient to plausibly suggest the existence of the

purported conspiracy" because the allegations "are consistent with each party pursuing its own rational economic self-interest.").

### III. The Complaint Fails to Allege Involvement of TPG in the Musixmatch/WCM Agreement

The Complaint fails to plausibly claim that TPG was involved in—let alone violated the antitrust laws with respect to—the Musixmatch/WCM agreement. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2016 WL 6782768, at *11 (C.D. Cal. Aug. 9, 2016) (applying *Bestfoods* in the context of a portfolio company and private equity sponsor). Thus, to state a claim against TPG relating to the Musixmatch/WCM agreement, "Plaintiff either must set forth facts establishing direct participation in the alleged conspiracy or set forth sufficient allegations showing that [TPG is] vicariously liable" for the acts of Musixmatch, its portfolio company. *In re California Title Ins. Antitrust Litigation*, 2009 WL 1458025, at *7 (N.D. Cal. May 21, 2009). The Complaint does neither.

<u>First</u>, the Complaint does not adequately plead independent, direct participation in any conspiracy by TPG. To plead a defendant's participation in a conspiracy, "the Ninth Circuit require[s] some showing—direct or circumstantial—that the [Sherman Act] defendants 'actively participated in an individual capacity in the scheme.'" *Gibson v. MGM Resorts Int'l*, No. 2:23-cv-00140, 2023 WL 7026984, at *2 (D. Nev. Oct. 24, 2023) (alterations in original) (citing *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1119 (9th Cir. 2022)). This requires that a plaintiff plead not only ultimate facts (such as a conspiracy), but evidentiary facts establishing each defendant's participation in the alleged conspiracy: "who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048; *see also Yates v. Money Source, Inc.*, 2023 WL 4305059, at *4 (E.D. Cal. June 30, 2023) (rejecting allegations that lumped together defendants "indiscriminately" under "a blanket assertion of conspiracy" (internal quotation marks and citations omitted)); *Top Rank, Inc. v. Haymon*, 2015 WL 9948936, at *9 (C.D. Cal. Oct. 16, 2015)

1  (dismissing Section 1 claim where, among other things, complaint relied on "group pleading"

2  instead of "alleg[ing] the specific conduct engaged in by each" defendant).

3       Plaintiff's claims against TPG rest on speculative, conclusory, and improper group

4  pleading allegations that fail to allege any specific facts showing that TPG directly engaged in,

5  directed, or otherwise participated in any unlawful conduct.  TPG is not a party to the

6  Musixmatch/WCM agreement, and nowhere in the Complaint does LyricFind allege any specific

7  or nonconclusory action by TPG concerning the agreement—that is, the Complaint is devoid of

8  any alleged direct or circumstantial evidence of TPG's participation in the Musixmatch/WCM

9  agreement.  This is insufficient to tie TPG to any anticompetitive contract or conspiracy relating

10 thereto.  *See Gibson*, 2023 WL 7026984, at *2; *United States v. CalPortland Constr.*, No. CV-

11 1604479JFWSSX, 2018 WL 6262877, at *3 (C.D. Cal. Mar. 9, 2018), *aff'd sub nom. Kraft v.*

12 *CalPortland Constr.*, 801 F. App'x 547 (9th Cir. 2020) ("The Complaint does not identify

13 individuals at each of the Defendant companies who entered into agreements, state when, where,

14 and how those individuals met to discuss and enforce agreements, and does not identify specific

15 products, prices, and regions that were agreed upon.  Failure to do so warrants dismissal."); *In re*

16 *Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009) ("[T]o state a claim against

17 parent corporations, plaintiffs must set forth facts establishing the parent corporations' direct and

18 independent participation in the alleged conspiracy.").[10]

19       The *only* allegations that even attempt to tie TPG to the Musixmatch/WCM agreement are

20 the conclusory allegations that Musixmatch acted "at the direction" of TPG or somehow

21 "orchestrated" Musixmatch entering the agreement.  *See, e.g.*, Compl. ¶¶ 134, 137.  The

22 Complaint often makes these allegations only on "information and belief" and nowhere does it

23 allege any facts to support these conclusory labels.  *See id.* ¶ 122 ("**Upon information and belief**,

24 it was through this detailed review of LyricFind's confidential information that TPG began to

25

26 [10]     LyricFind's conspiracy to monopolize claims (Counts 4 and 7) also fail to allege that
   TPG shared any "specific intent to monopolize" with its purported co-conspirators—another
27 dispositive flaw that renders dismissal appropriate.  *See Deborah Heart & Lung Ctr. v. Penn*
   *Presbyterian Med. Ctr.*, 2011 WL 6935276, at *10 (D.N.J. Dec. 30, 2011) ("[The] specific
28 intent to monopolize . . . must be shared by all the conspirators.").

crystallize its plan to exclude LyricFind from the market, through the WCM-Musixmatch Exclusive . . . ." (emphasis added)); ¶ 137 ("**Upon information and belief**, Musixmatch entered into the Exclusive at the direction of TPG, which after failing to acquire LyricFind, directly orchestrated and approved of the Exclusive as an alternative means of boosting Musixmatch's value." (emphasis added)).  Without supporting factual allegations, conclusory allegations "made only on information and belief" are "a naked assertion[ ] devoid of further factual enhancement, and [are] therefore insufficient." *Rearden LLC v. TWDC Enters. 18 Corp.*, 722 F. Supp. 3d 1011, 1018 (N.D. Cal. 2024) (quotations omitted); *see also Menzel v. Scholastic, Inc.*, No. 17-CV-05499, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) ("An allegation made on information and belief must be 'based on factual information that makes the inference of culpability plausible . . .'") (citing *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)); *Blantz v. Ca. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (discounting the "wholly conclusory allegation[s]" made "on information and belief," "that the supervisory defendants personally reviewed and, thus, knowingly ordered, directed, sanctioned or permitted" the allegedly wrongful conduct. (citation omitted)).  Accordingly, these allegations fail to support a plausible inference that TPG "knowingly, intentionally and actively participated in an individual capacity in the scheme which is said to result in the unlawful conspiracy." *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 232 (9th Cir. 1974).

<u>*Second*</u>, the Complaint is devoid of factual allegations that TPG should be vicariously liable for Musixmatch's conduct (even if such conduct were anticompetitive—which it is not).[11] The Complaint alleges no facts whatsoever suggesting a level of control sufficient to hold TPG

---

[11]    Courts have made clear that an assertion of *Copperweld* does not provide plaintiffs with a basis to claim vicarious liability in the absence of the extraordinary showing necessary to impose such liability.  While Defendants are viewed as a unit for purposes of application of the *Copperweld* doctrine, *Copperweld* "speaks only of a *unity of purpose*" and "does not supply a theory of unbounded vicarious liability for the acts of legally distinct entities."  *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 633 (9th Cir. 2018) (emphasis added) (quotations omitted); *see also Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*, No. 4:23-CV-04398, 2024 WL 5274650, at *5-6 (S.D. Tex. Sept. 27, 2024) (quotations omitted) (finding that "Plaintiffs cannot confer liability on [private equity sponsor] using the single enterprise theory").

1  vicariously liable for Musixmatch's conduct.  With respect to separate, corporate parent and

2  subsidiary relationships, "a shareholder may only be liable if the subsidiary is the shareholder's

3  'alter ego,' erected to insulate it from statutory liability, or its agent."  *In re Optical Disk Drive*

4  *Antitrust Litig.*, No. 10-MD-02143, 2017 WL 11513316, at *7 (N.D. Cal. Dec. 18, 2017).  "Public

5  policy dictates that the corporate form be disregarded only in narrowly defined circumstances."

6  *Id.* (quotations omitted).

7          LyricFind's Complaint does not even come close to alleging the types of facts necessary

8  to establish an alter ego or agency relationship here.[12]  To assert an alter ego claim, a plaintiff

9  must demonstrate "(1) that there [is] such unity of interest and ownership that the separate

10  personalities of the two corporations no longer exist and (2) that, if the acts are treated as those of

11  the corporation alone, an inequitable result will follow."  *In re Optical Disk*, 2017 WL 11513316,

12  at *7 (quotations and alterations omitted).  Similarly, to demonstrate an agency relationship, the

13  necessary nature of the control exercised by the parent over the subsidiary must be over and above

14  that to be expected as an incident of the parent's ownership of the subsidiary and must reflect the

15  parent's purposeful disregard of the subsidiary's independent corporate existence.  *In re*

16  *California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 4461199, at *2

17  (N.D. Cal. Sept. 29, 2021).  The Complaint contains absolutely no factual allegations supporting

18  either theory of liability.

19          Putting aside Plaintiff's over-the-top condemnation of the private equity business model

20  (*see* Compl. ¶¶ 110–14), private equity fund sponsors do not micromanage every contract or

21  transaction entered into by their portfolio companies, nor are there any allegations that TPG did

22  so here.  *See Elec. Med. Tr. v. U.S. Anesthesia Partners*, Inc., No. 4:23-CV-04398, 2024 WL

23

24  [12]     Notably, LyricFind's Unfair Competition Law claim (Count 10) cannot be predicated on
    vicarious liability.  *See Galope v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 12884663, at *3 (C.D.

25  Cal. Sept. 26, 2012), *rev'd in part on other grounds*, 566 F. App'x 552 (9th Cir. 2014); *Flores v.*
    *EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1119 (E.D. Cal. 2014) ("The concept of vicarious

26  liability has no application to actions brought under the unfair business practices act.  A
    defendant's liability must be based on his personal participation in the unlawful practices and

27  unbridled control over the practices that are found to violate section 17200 or 17500."
    (quotations omitted)).

28

5274650, at *6 (S.D. Tex. Sept. 27, 2024) ("Plaintiffs have not sufficiently alleged Welsh Carson's independent[] participat[ion] in the enterprise's scheme during the limitations period." (quotations omitted)); *Fed. Trade Comm'n v. U.S. Anesthesia Partners*, 2024 WL 2137649, at *4–5 (dismissing claim against private equity sponsor because the FTC's "only hook" was the sponsor's ownership stake rather than independent action by the sponsor, and noting that the sponsor's involvement in high-level strategy "does not change the analysis.").

## IV.    Plaintiff's Alleged Breach of the NDA Is Implausible on Its Face

The claim that TPG and Musixmatch breached an NDA with LyricFind is likewise speculative, conclusory, and unsupported by any factual detail.  To survive dismissal, a claim for breach of contract must allege four elements: "(1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages."  *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1203 (N.D. Cal. 2020) (internal citation omitted).  LyricFind's Complaint fails to adequately allege any breach or damages to support this claim.

Notably absent from the Complaint are any specifics regarding the alleged breach—what information was disclosed, how that information could only have been learned through the due diligence process (rather than, *e.g.*, from public sources), or the circumstances of the disclosure, including how TPG and Musixmatch conspired to breach the NDA.  Such bare-bones and conclusory allegations are insufficient to survive a motion to dismiss.  *See, e.g.*, *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (dismissing claims for breach of NDA because the complaint "does not offer any factual allegations about what information [the defendant] used, how [the defendant] used that information, or how that purported use violated the NDA's confidentiality provisions."); *3D Systems, Inc. v. Wynne*, 2022 WL 21697345, at *6 (S.D. Cal. Mar. 9, 2022) (allegations of breach insufficient for one defendant because "the FAC ma[de] no mention at all about what he allegedly directly or indirectly use[d], divulge[d], disclose[d], release[d], publish[ed], or communicate[ed], in violation of the Confidentiality Agreements.").  This alone warrants dismissal of the claim.

Even if Plaintiff had pled these facts (which it has not), the Complaint alleges no injury resulting from the alleged disclosure. *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage."); *In re Hard Drive Suspension Assemblies Antitrust Litig.*, 2020 WL 5074041, at *2 (N.D. Cal. Aug. 26, 2020) ("An essential element of a claim for breach of contract are damages resulting from the breach." (citation omitted)). Quite the opposite—the Complaint concedes that no damages arose from the alleged disclosure, as LyricFind's negotiations with Spotify continued after the alleged breach, and the Complaint alleges that Spotify was prepared to switch from Musixmatch to LyricFind after the alleged disclosure. *See* Compl. ¶ 21 ("[T]he discussions between Spotify and LyricFind continued notwithstanding Defendants' wrongful disclosures . . . ."); *id.* ¶ 106 ("Spotify, however, continued to negotiate with LyricFind because the terms of its offer were considerably better than Musixmatch's."); *id.* ¶ 130 ("Spotify chose to continue negotiating with LyricFind. At the same time, Spotify continued integrating LyricFind's technical infrastructure for Lyric Data Services in anticipation of potentially switching from Musixmatch to LyricFind."). Indeed, the Complaint makes clear that it was the Musixmatch/WCM agreement, *not* any claimed breach of the NDA, that supposedly impacted Spotify's discussions with LyricFind. *See id.* ¶ 130 ("It was not until the WCM-Musixmatch Exclusive that these negotiations came to a decisive end."). As detailed above, though, TPG is not a party to and is not even alleged to have been involved in the formation or negotiation of that agreement.

These pleading deficiencies doom Plaintiff's contract claim (Count 13) as a matter of law. *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 506 (1967) ("A breach of contract without damage is not actionable.").[13]

---

[13] The application of Ontario law, which—although not pled—governs the NDA, would yield the same result. *See, e.g., Persaud v. Telus Corp.,* 2017 ONCA 479, para. 10 (Can. Ont. C.A.) ("The requirement for a causal link between the breach of contract and the damages suffered by the plaintiffs is an element of a breach of contract claim. It is trite law . . . ."); *See also PPC Broadband, Inc. v. Transformix Eng'g Inc.*, 2015 WL 339564, at *6 (N.D.N.Y. Jan. 26, 2015) ("Under Ontario law, the elements of a claim for breach of contract are 'the

1

### V.    Plaintiff's Interference Claims Are Legally and Factually Deficient

2       Plaintiff's claims for intentional interference with prospective economic advantage (Count

3  11) and negligent interference with prospective economic advantage (Count 12) fail for similar

4  reasons as Plaintiff's other claims.

5       _First_, to the extent that Plaintiff claims that TPG and Musixmatch interfered with

6  Plaintiff's relationship with Spotify by breaching the NDA,[14] such claim fails for the same reason

7  as the breach claim fails:  no specific conduct is alleged and no damages or injury were caused

8  by the purported conduct.  _See Damabeh v. 7-Eleven, Inc._, No. 5:12-CV-1739-LHK, 2013 WL

9  1915867, at *8 (N.D. Cal. May 8, 2013) (noting that in order to pursue intentional or negligent

10  interference with prospective economic advantage claims, Plaintiff must allege "damage to

11  plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole

12  or in part the economic benefits or advantage reasonably expected." (citation omitted)).

13       _Second_, to the extent that Plaintiff claims its prospective commercial relationships with

14  Spotify or iHeartRadio were damaged by virtue of the Musixmatch/WCM agreement,[15] such

15  claims fail because the Complaint does not allege any acts by TPG that were designed to disrupt

16  Plaintiff's economic relationships.   Specifically, to state a claim of intentional or negligent

17  _____

18  particulars of the alleged contract including its terms, the nature of the alleged breach, causation
    and damages that are alleged to have flowed from the breach.'" (citing _McCarthy Corp. PLC v._
19  _KPMG LLP_, [2006] O.J. No. 1492, para. 41 (Can. Ont. S.C.J.); _Wallace Sales & Consulting,_
    _LLC v. Tuopo N. Am., Ltd._, 2015 WL 4509349, at *3 (E.D. Mich. July 24, 2015) (citing
20  _McCarthy Corp. PLC v. KPMG LLP_ for the same proposition); _Bruce Kirby, Inc. v._
    _LaserPerformance (Eur.) Ltd._, 2019 WL 3767510, at *4 (D. Conn. Aug. 9, 2019) (same); _Am._
21  _Pan Co. v. Lockwood Mfg., Inc._, 2008 WL 471685, at *6 (S.D. Ohio Feb. 15, 2008) (same).
22  [14]    _See_ Compl. ¶ 255 ("With respect to Spotify, TPG and Musixmatch first wrongfully
    disclosed to Spotify confidential information belonging to LyricFind in breach of the NDA and
23  in a misguided attempt to disrupt LyricFind's and Spotify's ongoing negotiations.").
    [15]    _See_ Compl. ¶ 257 ("LyricFind's relationships with Spotify and iHeartRadio were
24  ultimately disrupted by Defendants' scheme, as Spotify and iHeartRadio informed LyricFind
    they could not award LyricFind their business because of the WCM-Musixmatch Exclusive, and
25  instead awarded their business to Musixmatch."); _id._ ¶ 255 ("Then, after orchestrating the
    WCM-Musixmatch Exclusive, Musixmatch informed Spotify about the unlawful and
26  anticompetitive WCM-Musixmatch Exclusive to discredit LyricFind, and interfere with
    LyricFind's prospective commercial relationship with Spotify, by indicating that LyricFind no
27  longer had access to WCM's lyric catalog.").

28

interference with prospective economic advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) ***intentional [or negligent] acts on the part of the defendant designed to disrupt the relationship***; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Crown Imports, LLC v. Superior Ct*., 223 Cal. App. 4th 1395, 1404 (Cal. App. 2014) (emphasis added) (citation omitted). This third element requires that a plaintiff plead and prove, "as an element of the cause of action itself, that the defendant's conduct was independently wrongful." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc*., 117 F. Supp. 3d 1092, 1117 (C.D. Cal. 2015). That critical element is lacking here, where the Complaint is bereft of any specific factual allegations tying TPG to the allegedly anticompetitive contract or even any communications with Spotify and iHeartRadio relating thereto. For these reasons, Counts 11 and 12 must be dismissed.

*Third*, any negligent interference claim also fails for failure to allege either (1) a duty of care running from TPG to LyricFind, or (2) negligent conduct. *See Damabeh*, 2013 WL 1915867, at *9 ("Plaintiff's claim [for negligent interference with an economic advantage] fails because Plaintiff has failed to show that Defendant owed Plaintiff a duty of care."); *Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825 (1994) ("The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care.").

## CONCLUSION

For the reasons set forth above and those in Musixmatch's motion to dismiss, the Court should dismiss all claims in the Complaint against TPG (Counts 1, 4, 7, 8, 9, 10, 11, 12 and 13) with prejudice. Dismissal with prejudice is appropriate because none of the Complaint's fatal flaws can be fixed by amendment. TPG was not a party to the allegedly anticompetitive agreement at the heart of Plaintiff's claims, and LyricFind cannot use vague and conclusory allegations to plead around the fact that TPG's participation in the alleged "scheme" is implausible, nonsensical, and impossible as a matter of law. *See Cervantes v. Countrywide Home*

*Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

Respectfully submitted,

Dated: June 5, 2025                    By: /s/ Josh A. Cohen

DEBEVOISE & PLIMPTON LLP

Josh A. Cohen (Cal. Bar No. 217853)
jacohen@debevoise.com
650 California Street
San Francisco, California 94108
(415) 738-5700 (phone)
(415) 644-5628 (fax)

Michael Schaper (*pro hac vice*)
mschaper@debevoise.com
Erica S. Weisgerber (*pro hac vice*)
eweisgerber@debevoise.com
Adam C. Saunders (*pro hac vice*)
asaunders@debevoise.com
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000 (phone)

Edward D. Hassi (*pro hac vice*)
Debevoise & Plimpton LLP
801 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 383-8000
thassi@debevoise.com

*Attorneys for Defendant TPG Global, LLC*