UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYRICFIND, INC., | Case No. 25-cv-02265-JSC |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANTS' MOTIONS TO DISMISS AND FOR LEAVE TO FILE AMENDED ANSWERS** |
| MUSIXMATCH, S.P.A., et al., | |
| Defendants. | Re: Dkt. Nos. 150, 151 |

LyricFind, Inc. ("LyricFind") sues Musixmatch, S.p.A. ("Musixmatch"), TPG Global, LLC, and TPG Growth V Management, LLC (together, "TPG") for "orchestrat[ing] an anticompetitive scheme . . . to foreclose competition from" LyricFind. (Dkt. No. 143 ¶ 1.)[1] Pending before the Court is Defendants' motion to dismiss Plaintiff's unjust enrichment claim and to strike Plaintiff's new requests for equitable relief. (Dkt. No. 150.) Having carefully considered the parties' submissions, and with the benefit of oral argument on August 6, 2026, the Court GRANTS Defendants' motion. Specifically, the Court dismisses Plaintiff's request for disgorgement pursuant to its Sherman Act and Cartwright Act claims because disgorgement is not an available statutory remedy, dismisses Plaintiff's unjust enrichment claim because Plaintiff has not plausibly alleged it conferred any benefit upon Defendants, and dismisses Plaintiff's request for restitutionary disgorgement under its Unfair Competition Law claim because Plaintiff does not oppose Defendants' motion on that ground.

Defendants also move for leave to file amended answers. (Dkt. No. 151.) Because Plaintiff does not oppose Defendants' motion for leave to file amended answers, (Dkt. No. 157),

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

the Court GRANTS the motion.  *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.").

**BACKGROUND**

**I.    AMENDED COMPLAINT ALLEGATIONS**

"LyricFind and Musixmatch are competitors who provide music lyric services to digital services providers ('DSPs'), like Spotify and YouTube Music, which display music lyrics on their digital streaming platforms."  (Dkt. No. 143 ¶ 1.)  Musixmatch is an Italian corporation with its principal place of business in Italy.  (*Id.* ¶ 35.)  TPG is "a private equity group that owns, controls, and directs Musixmatch."  (*Id.* ¶ 1.)

Among other things, Defendants "orchestrated an exclusive agreement between Musixmatch" and music publisher Warner Chappell Music, Inc. ("WCM"), a California company, which "cut off LyricFind's and other providers' previous non-exclusive access to WCM's lyric catalog, and with it, many of the popular lyrics needed to compete for any DSP's business."  (*Id.* ¶¶ 1, 7, 39.)  And although "LyricFind has worked for years to erode Musixmatch's monopoly over Lyric Data Services by offering higher-quality lyric services to DSPs at lower prices," Defendants "embarked on a multi-faceted 'buy or bury' scheme to exclude LyricFind and other providers from the market so it could continue charging unlawfully inflated prices without the risk of losing business."  (*Id.* ¶ 3.)

Musixmatch "regularly transacts business" in California, including "contracting with WCM and other licensors[,] . . . customers and licensees," "providing lyric products and services to consumers," "attending key executives' meetings," and "maintaining an office" in California.  (*Id.* ¶ 41.)  TPG also "regularly transact[s] business" in California, including "controlling and managing Musixmatch, contracting with customers . . . , engaging in marketing and business development . . . , attending key executives' meetings . . . , and maintaining an office" in California.  (*Id.* ¶ 42.)  TPG Growth V Management, LLC is headquartered in San Francisco.  (*Id.*)

"Legal remedies are inadequate to make LyricFind whole or to fully remedy Defendants' wrongful conduct" because "Defendants have gained unjust benefits that are separate from, and exceed, the losses LyricFind could recover through compensatory damages."  (*Id.* ¶ 199.)

Specifically, "Musixmatch's anticompetitive conduct enabled it to charge supracompetitive fees," including from Spotify and iHeartRadio, "that exceed the fees that LyricFind would have earned in a competitive market." (*Id.* ¶ 200.)  Additionally, "Musixmatch charges independent artists and rights holders subscription fees through Musixmatch Pro to have their lyrics displayed on Spotify and other platforms," while LyricFind "does not charge fees to anyone, including independent artists and rights holders, for its comparable services." (*Id.* ¶ 201.)  So, although Defendants "generated additional unjust profits from Musixmatch Pro customers, who were forced to continue paying Musixmatch Pro's subscription fees to have their lyrics displayed on Spotify," "LyricFind does not charge corresponding fees and thus has no corresponding loss." (*Id.*)

## II.   PROCEDURAL HISTORY

On March 5, 2025, Plaintiff sued Defendants.  (Dkt. No. 1.)  Musixmatch and TPG moved to dismiss.  (Dkt. Nos. 53, 55.)  The Court denied Musixmatch's motion to dismiss for lack of personal jurisdiction, granted in part and denied in part Musixmatch's motion to dismiss for failure to state a claim, and granted in part and denied in part TPG's motion to dismiss.  (Dkt. No. 68.)  Plaintiff filed an amended complaint asserting causes of action for:

**(1)** Violating Sherman Act section 1, 15 U.S.C. § 1;
**(2)** Monopolization of the Lyric Data Services Market in violation of Sherman Act section 2, 15 U.S.C. § 2;
**(3)** Attempted monopolization of the Lyric Data Services Market in violation of Sherman Act section 2, 15 U.S.C. § 2;
**(4)** Monopoly leveraging of the Lyric Data Services Market in violation of Sherman Act section 2, 15 U.S.C. § 2;
**(5)** Monopolization of the Lyric Rights Sublicensing Submarket in violation of Sherman Act section 2, 15 U.S.C. § 2;
**(6)** Attempted monopolization of the Lyric Rights Sublicensing Submarket in violation of Sherman Act section 2, 15 U.S.C. § 2;
**(7)** Agreement in violation of the California Cartwright Act, Cal. Bus. & Prof. Code § 16720;
**(8)** Unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200;
**(9)** Intentional interference with prospective economic advantage;
**(10)**    Breach of contract; and
**(11)**    Unjust enrichment.

(Dkt. No. 143 ¶¶ 204-307.)  Plaintiff's Sherman Act and Cartwright Act claims seek damages and equitable relief, including nonrestitutionary disgorgement, (*id.* ¶¶ 209-211, 219-221, 230-232, 240-242, 250-252, 261-263, 267-269); Plaintiff's UCL claim seeks injunctive relief and

United States District Court
Northern District of California

restitutionary disgorgement, (*id.* ¶¶ 275-276); and Plaintiff's unjust enrichment claim seeks restitution and nonrestitutionary disgorgement, (*id.* ¶ 307).

Defendants now move to: (1) dismiss Plaintiff's unjust enrichment claim, (2) strike Plaintiff's requests for equitable relief, including nonrestitutionary disgorgement, in its Sherman Act and Cartwright Act claims, and (3) strike Plaintiff's request for restitutionary disgorgement in its UCL claim. (Dkt. No. 150.)

**DISCUSSION**

### I.    AVAILABILITY OF DISGORGEMENT FOR STATUTORY CLAIMS

Although Defendants ask the Court to strike Plaintiff's requests for equitable relief pursuant to its Sherman Act and Cartwright Act claims, Defendants only argue disgorgement is an unavailable statutory remedy.

As a preliminary matter, Defendants' framing of their motion as seeking to "strike" the disgorgement demands pursuant to Rule 12(f) is procedurally improper. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (holding Rule 12(f) does not authorize district courts to strike claims for damages on the ground the claims are "precluded as a matter of law"). But, as Plaintiff did not object on this ground, the Court will treat Defendants' motion to strike as a motion to dismiss and apply Rule 12(b)(6), as is required.

### A.    Sherman Act Claims

The Clayton Act authorizes private parties with Sherman Act claims to seek damages under Section 4, 15 U.S.C. § 15, and equitable remedies under Section 16, 15 U.S.C. § 26. *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 233 (9th Cir. 1976). However, Section 16 provides only for "injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." *See* 15 U.S.C. § 26. So, because Section 4 covers "[r]ecovery for past losses," Section 16 "limits the equitable remedies available under its terms to those against 'threatened loss or damage'" and does not allow for restitution. *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d at 234 (citing 15 U.S.C. § 26) (holding claim for restitution in form of "reimbursing those persons who have paid for retrofitting their own vehicles" is not allowed as a remedy under section 16).

Like restitution, "[d]isgorgement is a form of retrospective equitable relief." *See Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998)).  So, disgorgement is not an available remedy under Clayton Act Section 16.  *See Fry v. Cap. One Fin. Corp.*, No. 25-CV-03769-HSG, 2026 WL 751422, at *6 (N.D. Cal. Mar. 17, 2026) ("[B]inding Ninth Circuit precedent bars Plaintiffs' request for disgorgement as a remedy . . . [because] [t]he Ninth Circuit has held that private plaintiffs may not seek 'recovery for past losses' via a Section 16 claim." (quoting *In re Multidistrict Vehicle Air Pollution*, 538 F.2d at 234)).

Plaintiff clarifies it seeks "forward-looking equitable relief," but not "monetary disgorgement of Defendants' past profits under its Sherman Act claims." (Dkt. No. 160-1 at 23 n.7.)  So, to the extent Plaintiff's complaint seeks disgorgement pursuant to its Sherman Act claims, the Court strikes such claims for relief.

### B.     Cartwright Act Claim

The Cartwright Act authorizes a private plaintiff "to recover three times the damages sustained by him or her, interest on his or her actual damages, . . . and preliminary or permanent injunctive relief."  *See* Cal. Bus. & Prof. Code § 16750(a).  According to Plaintiff, nonrestitutionary disgorgement encompasses profits Defendants obtained which either "exceed the fees that [Plaintiff] would have earned," or "for which [Plaintiff] has not suffered a corresponding loss." (Dkt. No. 143 ¶¶ 200-201.)  So, nonrestitutionary disgorgement is neither "damages sustained by" Plaintiff nor a form of forward-looking injunctive relief.  And by explicitly designating particular remedies available to a private plaintiff, the Cartwright Act implies the exclusion of other non-listed remedies, such as disgorgement.  *See In re Bryce C.*, 12 Cal. 4th 226, 231 (1995) ("Generally, the expression of some things in a statute implies the exclusion of others not expressed."); *see also Imperial Merch. Servs., Inc. v. Hunt*, 47 Cal. 4th 381, 390 (2009) ("Thus, the fact that the Legislature expressly designated specific damage remedies while omitting others, such as prejudgment interest, reflects that it intended the prescribed remedies to be exclusive.").  So, nonrestitutionary disgorgement is not available to Plaintiff as a remedy for its Cartwright Act claim.

United States District Court
Northern District of California

Rather than argue disgorgement constitutes either damages or injunctive relief, Plaintiff argues the Cartwright Act allows disgorgement because the Cartwright Act's "overarching goals [include] maximizing effective deterrence of antitrust violations, enforcing the state's antitrust laws against those violations that do occur, and ensuring disgorgement of any ill-gotten proceeds." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 764 (2010); *see also AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1112-13 (9th Cir. 2013) (quoting *Clayworth*, 49 Cal. 4th at 764). But *Clayworth* also explained "treble damages may overcompensate injured plaintiffs, but they do so in order to . . . maximiz[e] deterrence and the probability of full disgorgement." *See Clayworth*, 49 Cal. 4th at 783-84. So, language in *Clayworth*—and federal and state courts' citation to that language—is not persuasive evidence the Cartwright Act authorizes disgorgement as a distinct remedy. Instead, *Clayworth* indicates the Cartwright Act authorizes treble damages as a means to functionally achieve disgorgement. *See also State of California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 472 (1986) ("[T]he purposes of the private damages action for violations of the Cartwright Act include disgorgement and deterrence as well as compensation." (citation omitted)).

Furthermore, given the plain language of California Business & Professions Code Section 16750(a), Plaintiff's insistence "the Cartwright Act is broader in range and deeper in reach than the Sherman Act" is unavailing. *See Cianci v. Superior Ct.*, 40 Cal. 3d 903, 920 (1985). Although the Clayton Act is "not necessarily dispositive," Section 16750(a) mirrors the remedies available to a private plaintiff under Clayton Act Sections 4 and 16. *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 985 (9th Cir. 2000) ("[F]ederal antitrust precedents are properly included in a Cartwright Act analysis, but their role is limited: they are 'often helpful' but not necessarily dispositive." (citing *State of California ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal. 3d 1147, 1164 (1988))). Furthermore, Plaintiff's reliance on *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-05944 SC, 2015 WL 13756254 *4 (N.D. Cal. Aug. 13, 2015), in which a special master issued a discovery order allowing the California Attorney General to submit an expert report "relat[ing] to state court claims for civil penalties, injunctive relief, restitution and disgorgement of profits as a part of injunctive relief under the Cartwright Act," is unpersuasive. That no California court, including federal court, has held a private plaintiff can obtain

disgorgement of profits under the Cartright Act demonstrates the statute's plain language identifying available remedies controls.

So, the Court dismisses Plaintiff's requests for disgorgement as a form of relief for its Sherman Act and Cartwright Act claims.

## II.    UNJUST ENRICHMENT CLAIM

The Ninth Circuit and the California Supreme Court have allowed claims for unjust enrichment to proceed as quasi-contract claims seeking restitution.  *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015)); *see also City of Oakland v. Oakland Raiders*, 83 Cal App. 5th 458, 477 (2022) ("There is no cause of action in California labelled 'unjust enrichment.' . . . But common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'" (cleaned up)).  So, unjust enrichment "applies where plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009), *as modified* (Dec. 28, 2009).

Plaintiff alleges Defendants' anticompetitive conduct allowed Defendants to unjustly generate supracompetitive profits from DSP customers like Spotify and iHeart Radio, as well as from Musixmatch Pro customers.  (Dkt. No. 143 ¶¶ 200-201.)  But although Plaintiff alleges Defendants' customers, by paying supracompetitive prices, conferred a benefit upon Defendants, Plaintiff has not alleged ***Plaintiff*** conferred a benefit upon Defendants.  Instead, Plaintiff's unjust enrichment claim seeks to recover "profits that Defendants actually obtained" on top of "the lost profits that [Plaintiff] would have earned in a competitive market," as well as "profits . . . for which [Plaintiff] does not have a corresponding loss."  (*Id.* ¶¶ 304-305.)

Plaintiff does not contend it conferred any benefit upon Defendants.  Instead, Plaintiff argues it need not allege it conferred a benefit on Defendants as long as Defendants benefited "at [Plaintiff's] expense." *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir.

2016) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000))); *see also Prof. Tax App. v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) ("The elements of a cause of action for unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" (quoting *Lectrodryer*, 77 Cal. App. 4th at 726)).

But Plaintiff does not cite any California or federal appellate case holding a plaintiff who had no relationship with the defendant, such that there is no quasi-contract and the plaintiff conferred no benefit on the defendant, can bring a non-restitutionary disgorgement claim for unjust enrichment. Instead, the cases Plaintiff cites held the defendant benefited at the plaintiff's expense ***because*** the plaintiff alleged it conferred a benefit upon the defendant. For example, in *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016), a plaintiff paid an attorney $2.8 million to place in a client trust account, but the attorney instead placed that money in the defendant's account and used it to pay itself for work done for the defendant. *Id.* at 1039. The plaintiff thus conferred a $2.8 million benefit on the defendant.

The only somewhat factually similar case Plaintiff cites—*Process Specialties, Inc. v. Sematech, Inc.*, No. CIV S-00-414 FCD PAN, 2002 WL 35646610 (E.D. Cal. Jan. 18, 2002)—a 24-year old district court case that has never been cited for the proposition Plaintiff urges, does not persuade. There the plaintiff presented evidence the defendant "ha[d] engaged in illegal conduct directly depriving [the plaintiff] of its share of the test wafer market," which raised as issue of material fact "as to whether [the defendant] has unjustly retained a benefit which in equity and good conscience belongs to [the plaintiff]." *Id.* at *20. But the court emphasized "[t]he doctrine of unjust enrichment is applicable, however, only when the property sought to be returned, in equity and good conscience, belongs to the plaintiff." *Id.* at *19 (citing *W. Pac. R. Corp. v. W. Pac. R. Co.*, 206 F.2d 495, 500 n.7 (9th Cir. 1953)). But drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not plausibly alleged supracompetitive prices paid by Spotify and other similar services to Defendants somehow belong to Plaintiff. So, *Sematech* does not support Plaintiff's insistence it can bring an unjust enrichment claim under the facts alleged here.

8

United States District Court
Northern District of California

Plaintiff also cites *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230 (2018), to argue "[a] 'benefit' can be 'any form of advantage'; it need not be taken from the plaintiff so long as it comes at the plaintiff's expense." (Dkt. No. 159 at 18 (quoting *Prof. Tax App.*, 29 Cal. App. 5th at 238).) But Plaintiff misrepresents *Professional Tax Appeal*, which never states the benefit need not be taken from the plaintiff. *Cf. Prof. Tax App.*, 29 Cal. App. 5th at 238 (holding "[t]he complaint alleges sufficient facts showing a benefit conferred upon defendants by plaintiff"). Instead, *Professional Tax Appeal* explained "[t]he benefit that is the basis of a restitution claim may take any form, direct or indirect[,] . . . [and] may consist of services as well as property." *See id.* (cleaned up). So, the court there held although the plaintiff did not directly provide property to the defendant, the plaintiff alleged it conferred a benefit by providing the defendant with valuable services, namely, prosecuting tax refund claims and securing the defendant tax refunds. *See id.* at 238-39; *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-600 (9th Cir. 2020) (holding plaintiffs plausibly alleged they had conferred a benefit on Facebook by sharing their personal data, from which Facebook profited, even if the plaintiffs did not "directly expend [their] own financial resources" and Facebook did not "directly cause[] the plaintiff[s'] property to become less valuable").

So, because Plaintiff does not cite any case in which a court has upheld an unjust enrichment claim without a plaintiff's alleging it "conferred a benefit on [the] defendant," *see Hernandez*, 180 Cal. App. 4th at 938, and Plaintiff does not dispute it has not alleged it conferred any benefit on Defendants, the Court dismisses Plaintiff's unjust enrichment claim.

### III.    ADEQUATE REMEDY AT LAW

Defendants also seek to dismiss Plaintiff's requests for equitable monetary relief in its Sherman Act and Cartwright Act claims, its request for restitutionary disgorgement under the UCL, and its unjust enrichment claim because Plaintiff has not plausibly alleged legal remedies are inadequate. For the reasons explained above, the Court dismisses Plaintiff's requests for disgorgement pursuant to its Sherman Act and Cartwright Act claims and dismisses Plaintiff's unjust enrichment claim. And, because in opposing Defendants' motion, Plaintiff only addresses its requests for nonrestitutionary disgorgement, (Dkt. No. 160-1 at 13, 15, 16, 18), the Court

United States District Court
Northern District of California

dismisses Plaintiff's requests for restitutionary disgorgement under the UCL. *Cf. Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003) ("[N]onrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL."). So, the Court need not consider whether it has equitable jurisdiction to consider these claims.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss Plaintiff's requests for disgorgement under its Sherman Act and Cartwright Act claims, Plaintiff's request for restitutionary disgorgement under the UCL, and Plaintiff's unjust enrichment claim.

Leave to amend would be futile, and so is denied. The Cartwright Act does not include a disgorgement remedy for a private plaintiff as a matter of law. And, the caselaw does not support Plaintiff's insistence it can bring an unjust enrichment claim under Plaintiff's theory of the case. Since Plaintiff cannot obtain these equitable remedies under California law, and Plaintiff does not contend Italian law provides for nonrestitutionary disgorgement, the Court need not and does not decide whether Italian law rather than California law would govern.

The **August 19, 2026** case management conference remains on calendar. An updated joint case management statement is due one week in advance.

This Order disposes of Docket Nos. 150 and 151.

**IT IS SO ORDERED.**

Dated: August 6, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge